(No. 20788.

SETH SEIDERS, Plaintiff in Error, *vs.* CHARLES F. HENRY, Defendant in Error.

*Opinion filed February 19, 1932.*

WILLIAM L. KELLEY, and JOHN W. MARSHALL, (ROY S. GASKILL, of counsel,) for plaintiff in error.

CUMMINGS & WYMAN, (AUSTIN L. WYMAN, and FRANKLIN J. STRANSKY, of counsel,) for defendant in error.

Mr. JUSTICE ORR delivered the opinion of the court:

In this case *certiorari* was granted to review a judgment of the Appellate Court for the First District which reversed a judgment obtained by Seiders against Henry in the municipal court of Chicago for $23,894.72. The suit below was an action in contract, wherein Seiders sued for the return of $20,000 paid by him to Henry under the terms of a written contract for the purchase of a bungalow on the roof of a co-operative apartment building and for damages sustained in connection therewith. On appeal the Appellate Court made a finding of fact, as follows: "We find as facts that plaintiff and defendant entered into the written contract which appears in the evidence of this case; that defendant has at all times been willing and able to comply with all things that he agreed to perform under the terms and covenants of said contract; that plaintiff, without cause, refused to abide by and perform the agreements and covenants undertaken by him under the terms of said contract; that he is therefore not entitled to recover against the defendant and that a judgment of *nil capiat* should be entered in this court in favor of the defendant."

It is argued by Seiders that this finding by the Appellate Court was a conclusion of law rather than a finding of fact; and that it is not supported by the evidence in the record. A comparison of the finding with the record shows that this point is well taken. This court, on review of a case at law, is bound as to questions of fact by the finding of the Appellate Court, except where the correctness of the finding becomes a question of law. (*Martin* v. *Central Trust*

*Co. 327 Ill. 622; Phillabaum v. Lake Erie and Western Railroad Co. 315 id. 131.)* It therefore remains for us to determine whether there is any evidence in the record to support the finding of the Appellate Court. This is a question of law. *Schaefer v. Washington Safety Deposit Co. 281 Ill. 43.*

The agreement forming the basis of this suit was made February 15, 1927, and is as follows:

*"Proposition*

"Chas. F. Henry, 201 East Delaware Place, Chicago, Illinois.

"I hereby agree to purchase from you the bùngalow located on the roof of the eighteenth floor of the building known as 201 East Delaware for the sum of eighty-four thousand ($84,000) dollars, payable as follows: $30,000 on delivery of stock and 99-year lease and purchase agreement; $20,000 on or before May 15, 1927; $20,000 on or before August 15, 1927; $14,000 on or before November 15, 1927; together with six per cent interest on all unpaid balances.

"It is further understood and agreed that you are to build me an additional maid's room attached to and adjoining the present room, for which I am to pay five hundred ($500) dollars in the event this shall cost more than three thousand ($3000) dollars. Should the cost be less than twenty-five hundred dollars ($2500) I am to pay nothing. Assessment to be arranged by attorneys for both parties on square-foot basis. It is further understood and agreed the bungalow is to be finished immediately according to the original plans and specifications, from which there will be no deviation except upon my consent.

"It is understood and agreed that you are to arrange my interest in the corporation so that in the event of a complete sale of the building I am to receive the prorated share of the receipts as 840 compared to 8200.

Accepted:                                    SETH SEIDERS.
        CHAS. F. HENRY,
              By C. J. Williams."

There is no dispute over the execution of this agreement, Henry then being in Florida and Williams admittedly being his agent. Neither is it denied that Seiders paid Williams $20,000 and that Williams consented to give Seiders possession and assisted him in selecting carpets and placing them in the bungalow. The chief dispute between

the parties was over the issuance and manner of delivery of 840 shares of $100 stock in the building corporation, mentioned in the last paragraph of the contract. Seiders contends that he was entitled to have all this stock delivered to him without conditions or restrictions, in accordance with the terms of the contract. Henry asserts that Seiders knew that only 130½ shares were allotted to the bungalow and that his offer to place 710 additional shares in escrow was a compliance with the terms of the contract. The stock was never tendered to Seiders, and he refused to pay the remainder of the initial payment or to sign the formal contract and lease afterwards submitted to him by Henry.

We have carefully reviewed the record and find no evidence which entitled Henry to a judgment *nil capiat*. The contract in question was not prepared by a lawyer and its provisions were loose and indefinite, leaving much to be afterwards arranged. This indefiniteness led to disputes both as to the amount of monthly assessments for maintenance and as to the delivery of stock. Seiders, after paying $84,000 for his bungalow, wanted to keep his monthly assessments as low as possible for light, heat, elevator, janitor, laundry and other services rendered by the building corporation. These assessments were shown to be $1.27 for each share of stock, and on this basis Seiders, although owning the bungalow, would have been required to pay an additional $1000 per month as an assessment on 840 shares of stock. The evidence in the record fails to show that the attorneys for both parties ever came to an agreement on the amount of these assessments, as the contract required, although they were tentatively fixed at $675 per month. But the disagreement over the delivery of the stock was even more pronounced and irreconcilable. In this connection the evidence shows that when the building corporation was incorporated and received permission to sell its stock it allotted only 130½ shares to the bungalow in its statement

filed with the Secretary of State. Henry at that time expected to live in the bungalow, and his assessments on this stock at $1.27 per share would thus have been only $165 per month. Upon the sale to Seiders it is evident that Seiders was to receive 840 shares of stock, but, as Williams testified, neither he nor Seiders knew how it was going to be arranged. This point was in abeyance until Henry returned from Florida, about March 1. In the meantime Seiders was denied the privilege of moving in after his carpets had been laid and over two weeks after he had paid $20,000 to Williams. On March 3 Henry offered to deliver 130½ shares of stock to Seiders and to put 710 additional shares in escrow to protect Seiders only in case of sale of the building. Seiders objected to this escrow arrangement because it did not give him the ultimate ownership of more than 130½ shares of stock. He requested Henry to return his money, but the latter refused.

A review of the record fails to disclose any such compliance by Henry with all the terms of the contract as was essential to declare a forfeiture in his favor against Seiders. The important matter of arranging Seiders' interest in the corporation to protect him in the event the building was sold was not consummated, as the parties failed to agree upon any plan satisfactory to both. When Seiders purchased the bungalow belonging to the building corporation he was entitled by the terms of the contract to the delivery of 840 shares of stock in the corporation upon the payment of $30,000. If, because of restrictions in allotting only 130½ shares of stock to the bungalow in the statement filed with the Secretary of State, Henry could not or would not deliver the remaining 710 shares to Seiders except under escrow conditions restricting their use and possession, then Henry, and not Seiders, was responsible for the default. In any event, the contract contained no provision by which any sum of money could be retained by Henry as liquidated damages in case of Seiders' default

and no proof of damages was made which would warrant the *nil capiat* judgment of the Appellate Court in favor of Henry.

Seiders' good faith cannot be questioned, as he not only advanced $20,000 in money but also bought and laid carpets preparatory to moving into the bungalow. He was then denied the right to move in, and in the negotiations which followed after Henry returned to Chicago his requests for ample protection by the unconditional delivery of the full number of shares of stock he was paying for were not met by Henry. The proposed escrow was not a compliance with the terms of the contract but was a new and different offer not originally contemplated by the parties. The contract by its indefinite terms required further agreements between the parties before it became of binding force upon either, and their subsequent efforts in this direction failed. Under these circumstances the judgment of the municipal court of Chicago for the return of the $20,000 paid by Seiders was warranted by the evidence.

The judgment of the Appellate Court reversing the judgment of the municipal court is reversed and the cause is remanded to the Appellate Court for the First District, with directions to affirm the judgment of the municipal court respecting the return of the $20,000 to Seiders by Henry, and with further directions to determine what damages, if any, should be allowed to Seiders because of Henry's breach of the contract. The trial court assessed the sum of $3894.72 as a separate item of damages against Henry, and the Appellate Court made no finding of facts with reference to such damages. The determination of the correct amount of damages due, if any, is a fact to be ascertained on a review of the evidence in that regard by the Appellate Court.

*Reversed and remanded, with directions.*