■ In the Matter of the Dissolution of SEAGROATT FLORAL COMPANY, INC., Appellant-Respondent. JAMES H. RICCARDI et al., Respondents-Appellants. (And Another Related Proceeding.)—Casey, J. (1) Appeal from an order of the Supreme Court (Travers, J.), entered June 7, 1989 in Rensselaer County, which, *inter alia,* in two proceedings pursuant to Business Corporation Law article 11, approved a Referee's determination of the value of petitioners' stock, and (2) cross appeals from the judgment entered thereon.

Each of the two petitioners owns slightly more than 17% of the stock in respondents, Henry J. Seagroatt, Inc. (hereinafter HJS) and Seagroatt Floral Company, Inc. (hereinafter SFC). In July 1987, petitioners commenced separate proceedings against HJS and SFC (hereinafter collectively referred to as the corporations) seeking dissolution pursuant to Business Corporation Law § 1104-a. The corporations thereafter elected to purchase petitioners' shares, pursuant to Business Corporation Law § 1118, and Supreme Court referred the question of the value of petitioners' shares to a Referee. After extensive discovery and a lengthy hearing, the Referee found that the corporations had to be valued as a single business for the purpose of determining the value of petitioners' shares. The Referee adopted the value of $9,485,975 presented by petitioners' expert, subtracted the value of the outstanding preferred stock and applied a 25% lack-of-marketability discount to arrive at a fair value of $1,230,608.68 for each petitioner's shares of the corporations. The Referee also determined that petitioners were entitled to interest at the rate of 9% per annum from the date the petitions were filed to the date of entry of judgment. As to the method of payment, the Referee concluded that instead of a lump-sum payment, it was reasonable to require that each petitioner be paid $500,000 within 60 days of entry of judgment, with the balance to be paid over a period of eight years with interest at 10% per annum. Supreme Court approved the proposed judgment submitted by the Referee along with his report, and the parties cross-appealed from the court's judgment.

The corporations contend that the Referee erred in valuing them as a single entity and in imposing joint and several liability on the corporations. "Value 'should be determined on the basis of what a willing purchaser, in an arm's length transaction, would offer for the corporation as an operating business, rather than as a business in the process of liquidation' " *(Matter of Pace Photographers [Rosen],* 71 NY2d 737, 748, quoting *Matter of Blake v Blake Agency,* 107 AD2d

139, 146, *lv denied* 65 NY2d 609). The expert relied upon by the corporations presented what were described as "fair estimations of the value of the shares of the two companies assuming that they are independent companies". Despite having valued the corporations as separate entities, this expert concluded: "But the two companies are, in fact, intricately linked by product, management and ownership. * * * If these companies were sold to an independent third party * * * HJS and [SFC] would be run as a single company with a small management team." The record firmly establishes that a willing buyer could not be found for either of the two corporations separately. Historically, the corporations were run as a single business. The corporations, as well as a third entity operating as a partnership, are owned by the same people each having approximately the same relative ownership in each of the corporations. The prosperity of each of the corporations is dependent on the prosperity of the other, and there are numerous organizational, operational and financial linkages between them. The Referee correctly concluded that the corporations must be considered as a single business, with one consolidated statement in order to determine the fair value of petitioners' shares. The corporations' argument to the contrary ignores the reality and substance of their business operation and relies instead on the form in which they operate their business. Because the corporations are in reality a single business, the imposition of joint and several liability for the purchase of petitioners' shares was appropriate. The corporations claim that the imposition of joint and several liability is improper in that it will require one corporation to be responsible for the liability of the other, but such a requirement is consistent with the manner in which the corporations are operated. For example, SFC routinely pays for the administrative services for HJS.

Continuing this reliance upon form over substance, the corporations also contend that because separate proceedings were commenced by petitioners and no party moved to consolidate the proceedings, Supreme Court erred in issuing a single order and a single judgment. According to the corporations, Supreme Court's actions constituted an impermissible *sua sponte* consolidation of the two proceedings. In an apparent effort to bolster this argument, they have submitted on this appeal two sets of records and briefs, which are virtually identical except for the name of the corporations. The proceedings were prosecuted together, with a single hearing before the Referee and a single report was issued by the Referee,

without objection. In view of the factual findings and legal conclusions contained in the report, which were approved by Supreme Court, a single judgment was clearly appropriate.

The remainder of the corporations' arguments are devoted to an attack upon the opinion presented by petitioners' expert and a claim that the corporations presented the only relevant evidence of the value of petitioners' shares. A review of the record reveals no merit to these arguments. The Referee's decision to accept the opinion of petitioners' expert, based in part upon an evaluation of the credibility of that witness and the evidence relied upon by him in forming his opinion, is amply supported by the record.

Turning to the cross appeal, we agree with petitioners that the Referee erred in applying a 25% discount for lack of marketability. A discount for lack of marketability is appropriate in valuing the shares of a closely held corporation because those shares cannot readily be sold on a public market (see, Matter of Blake v Blake Agency, 107 AD2d 139, 149, supra), but the record in this case establishes that the valuation method used by petitioners' expert included a marketability discount. The expert testified that lack of marketability was a risk factor that he included in his determination of the appropriate capitalization rate. He explained that his selection of an appropriate capitalization rate involved the exercise of his subjective judgment based upon his experience and expertise. As a result, he could not quantify any particular factor, including lack of marketability, but he insisted that lack of marketability was a consideration in his formulation of the capitalization rates used in his valuation method. The Referee accepted this expert's valuation method, including the capitalization rates, but rejected the expert's testimony concerning the inclusion of a lack-of-marketability discount in the capitalization rates. There is, however, no evidence in the record to support the Referee's conclusion that petitioners' expert failed to take lack of marketability into account. In short, there is no rational basis for rejecting the expert's testimony concerning lack of marketability while accepting the remainder of his testimony concerning the valuation of petitioners' shares (cf., People v Blim, 63 NY2d 718, 721).

We reach a different conclusion concerning the Referee's deduction of $18,000 for the value of the outstanding shares of preferred stock. The valuation method used by petitioners' expert took into account the value of the dividends produced by the preferred stock, but no adjustment was made for the value of the stock itself. Accordingly, we cannot say that the

Referee erred in concluding that a deduction is appropriate, and there is adequate support in the record for the Referee's selection of $18,000 as the amount of the deduction.

Petitioners also object to the interest rates used by the Referee and the Referee's extension of the terms of the corporations' payment to petitioners over an eight-year period, determinations which were approved by Supreme Court. The rate of interest and the terms and conditions of the purchase of a minority shareholder's shares are discretionary matters for the court to determine (see, Business Corporation Law § 1118 [a], [b]), and we see no abuse of that discretion here.

As a result of our conclusion that the Referee erred in applying a lack-of-marketability discount to the value presented by petitioners' expert, the order approving the report must be modified, the judgment must be reversed and new computations must be made. The matter will be remitted to Supreme Court for the purpose of making the new computations.

Order modified, on the law and the facts, without costs, by reversing so much thereof as approved that portion of the Referee's report which applied a lack-of-marketability discount to the net value of the assets of respondents, Seagroatt Floral Company, Inc. and Henry J. Seagroatt Company, Inc., and by deleting the second decretal paragraph, and, as so modified, affirmed.

Judgment reversed, on the law and the facts, without costs, and matter remitted to the Supreme Court for further proceedings not inconsistent with this court's decision. Mahoney, P. J., Kane, Casey, Levine and Harvey, JJ., concur.