(No. 71249.

JUNE STANTON *et al.*, Appellees, v. REPUBLIC BANK OF SOUTH CHICAGO *et al.*, Appellants.

*Opinion filed October 17, 1991.*

BILANDIC, J., took no part.

Paul E. Freehling, of Pope, Ballard, Shepard & Fowle, Ltd., and William J. Harte, all of Chicago, for appellants.

Richard G. Schultz and Douglas R. Stevens, of Foran, Wiss & Schultz; William I. Goldberg, of Holleb & Coff; and John R. O'Brien, P.C., all of Chicago, for appellees.

Joseph M. Ambrose and Jeffrey C. Orr, of Saint & Ambrose, P.C., of Bloomington, for *amicus curiae* Community Bankers Association of Illinois.

JUSTICE HEIPLE delivered the opinion of the court:

This matter involves three consolidated cases which were each before the trial court for a determination of the "fair value" of plaintiffs' share of common stock of South Chicago Savings Bank (the Bank). The trial court determined the fair value of plaintiffs' shares to be $7,950.87 per share with a prejudgment interest rate of 7.345%. On direct appeal to this court, pursuant to Supreme Court Rule 302(b), we now affirm.

Under a plan of reorganization adopted by the Bank's directors, subject to the approval of plaintiffs and other shareholders, the Bank became the wholly owned subsidiary of a newly formed Delaware chartered bank holding company, Advance Bancorp, Inc. (Advance). Pursuant to the merger transaction, each share of common stock of the Bank would be exchanged for 10 shares of common stock of Advance.

On March 12, 1987, the merger was approved by a majority of the Bank shareholders. Plaintiffs, eight shareholders of the Bank stock, voted against the merger and thereafter perfected their dissenters' rights as set forth under section 29 of the Illinois Banking Act (Ill. Rev. Stat. 1989, ch. 17, par. 336). Plaintiffs owned

4.32% of the outstanding shares of the Bank's common stock. The merger became effective April 17, 1987. Plaintiffs did not want to become shareholders of Advance and did not choose to accept the Bank's offer to buy their shares. Plaintiffs then sought a trial court determination of the fair value of their interest in accordance with section 29. Section 29 provides as follows:

"If a stockholder of a state bank which is a party to a merger other than a merger which is to result in a national bank, shall file with such bank prior to or at the meeting of stockholders at which the plan of merger is submitted to a vote, a written objection to such plan or merger, and shall not vote in favor thereof, and such stockholder, within 20 days after receiving written notice of the date the merger became effective, shall make written demand on the continuing bank for payment of the fair value of his shares as of the day prior to the date on which the vote was taken approving the merger, the continuing bank shall pay to such stockholder, upon surrender of his certificate or certificates representing said stock, the fair value thereof. Such demand shall state the number of the shares owned by such dissenting stockholder. The continuing bank shall provide written notice of the effective date of the merger to all shareholders who have filed written objections in order that such dissenting shareholders may know when they must file written demand if they choose to do so. Any stockholder failing to make demand within the 20-day period shall be conclusively presumed to have consented to the merger and shall be bound by the terms thereof. If within 30 days after the date on which such merger was effected the value of such shares is agreed upon between the dissenting stockholders and the continuing bank, payment therefor shall be made within 90 days after the date on which such merger was effected, upon the surrender of his certificate or certificates representing said shares. Upon payment of the agreed value the dissenting stockholder shall cease to have any interest in such shares or in the continuing bank. If within such period of 30 days

the stockholder and the continuing bank do not so agree, then the dissenting stockholder may, within 60 days after the expiration of the 30-day period, file a complaint in the circuit court asking for a finding and determination of the fair value of such shares, and shall be entitled to judgment against the continuing bank for the amount of such fair value as of the day prior to the date on which such vote was taken approving such merger with interest thereon to the date of such judgment. The practice, procedure and judgment shall be governed by the Civil Practice Law of this State. The judgment shall be payable only upon and simultaneously with the surrender to the continuing bank of the certificate or certificates representing said shares. Upon the payment of the judgment, the dissenting stockholder shall cease to have any interest in such shares or in the continuing bank. Such shares of stock may be held and disposed of by the continuing bank. Unless the dissenting stockholder shall file such complaint within the time herein limited, such stockholder and all persons claiming under him shall be conclusively presumed to have approved and ratified the merger, and shall be bound by the terms thereof. The right of a dissenting stockholder to be paid the fair value of his shares of stock as herein provided shall cease if and when the continuing bank shall abandon the merger." Ill. Rev. Stat. 1989, ch. 17, par. 336.

It should be noted that section 29 manifests an underlying philosophy of protection for dissenting minority shareholders who are otherwise nearly powerless to influence decisions and may be either ignored or treated unfairly by a majority group in control. The control group in the instant situation made a decision to form a one-bank holding company and a restructuring of the Bank to make it a subsidiary of the holding company. Under the merger plan, the Bank was to merge with a subsidiary which would then change its name to South Chicago Savings Bank. Significantly, though no one disputes that the above stock and paper shuffling consti-

tutes a merger, after all is said and done, the same people would be serving the same customers at the same location. No change in the Bank's management or board was contemplated. Thus, considering that there was, in fact, a "merger," the primary issue for the court is what is fair value for the minority shareholders.

The trial court heard the testimony of three expert witnesses regarding a "fair value" determination of the stock. The Bank retained William Waldeck, the senior vice president of the Chicago Corporation, a shareholder of the Bank. Waldeck determined fair value by projecting future cash flows of the Bank and converting them to present value. Waldeck's opinion was based on a review and analysis of the Bank's capitalization, loans, investments, reserves, and income stream. Waldeck determined the fair value of the plaintiffs' shares as of March 11, 1987, as $2,866 per share.

Plaintiffs retained Arnold Hahn, a certified public accountant and partner at the public accounting firm of Ernst & Young. Hahn's opinion was based upon the projected future income of the Bank discounted to its value as of the March 11, 1987, valuation date. His fair-value determination was ascertained by what a knowledgeable purchaser would pay for the Bank on the valuation date. Hahn determined a discount rate of 8.5% and applied that rate to the amount of dividends the Bank would generate according to his projections. Hahn arrived at a fair value of $8,834 per share as of March 11, 1987.

Plaintiffs also retained David Clarke, a consultant specializing in the valuation of banks, to determine the "fair value" of plaintiffs' shares. Clarke basically used the same methodology as Hahn in his fair-value determination. Clarke projected future cash flows and applied a discount rate of 13.2% to determine the present value of that income. Clarke computed the fair value of plaintiffs' share to be $8,500 per share.

The trial court issued its ruling after hearing both direct and cross-examination of the experts, reviewing the post-trial briefs, and hearing closing arguments by the parties. The lower court found Hahn's testimony to be entitled to great weight as it was most persuasive and accurate. The court agreed with the total valuation provided by Hahn; however, it concluded that discounts for minority and lack of marketability should be applied. The trial court determined that 5% should be allocated for minority discount and 5% for lack of marketability for a total discount of 10%. Accordingly, the fair value determination was $7,950.87 per share with a prejudgment interest rate of 7.345%. Thus, the final valuation determined by the court fell in between the high figure testified to by the plaintiffs' experts and the low figure calculated by the Bank's expert.

Subsequent to judgment being entered by the trial court, the Bank filed an application under Supreme Court Rule 302(b) for direct appeal to this court which was granted. The Bank now contends before this court: (1) that the trial court erred in determining the fair value of plaintiffs' shares, as the methodology employed by Hahn, which the trial court relied upon, was unfair and would undermine the integrity of the banking industry; (2) that the amounts of the discounts determined by the court for minority and lack of marketability were arbitrarily low and without foundation; and (3) that the trial court erred in applying a prejudgment interest rate of 7.345% and applying that rate from the date that the stockholders voted on the merger.

Plaintiffs assert that the Bank is basically arguing that the trial court erred in accepting Hahn's testimony over Waldeck's testimony and the applicable standard of review is the manifest weight rule. Accordingly, plaintiffs urge this court to affirm the lower court's decision, as it was not against the manifest weight of the evi-

dence. From our review of the record, we agree with the decision of the trial court.

The lower court was correct in stating that its position was one of fact finder with a case that was essentially an "expert witness testimony evidence type of case." The trial judge further noted, and we agree, that the weight given to the experts' testimony depends on "traditional factors in weighing evidence, the demeanor of a witness while testifying, any interest, bias they might have in the outcome of the case, together with all the other facts and circumstances in the case." The trial judge was in the best position to weigh the expert testimony and supporting evidence. Thus, unless the trial court's findings were against the manifest weight of the evidence, this court, as the reviewing court, will not substitute its judgment as to the credibility of witnesses for that of the trial court. *Wynekoop v. Wynekoop* (1950), 407 Ill. 219, 226.

The Bank argues that this case is not one involving a manifest weight of the evidence determination, as there are no material facts in dispute. However, we agree with the plaintiffs that all of the factors concerning the valuation of stock were contested at trial. The Bank further argues that the court failed to follow the decisions in *Ahlenius v. Bunn & Humphreys, Inc.* (1934), 358 Ill. 155, *Stewart v. D.J. Stewart & Co.* (1976), 37 Ill. App. 3d 848, and *Independence Tube Corp. v. Levine* (1988), 179 Ill. App. 3d 911, which address the factors to be considered in determining the fair value of stock. We disagree with the Bank's contentions. Both *Ahlenius* and *Stewart* list factors to be considered by the trial court in determining fair value. These factors include, among others: (1) earning capacity; (2) investment value; (3) history and nature of the business; (4) economic outlook; (5) book value; (6) dividend paying capacity; and (7) market price of stock of similar businesses. Moreover, these

cases state that the weight given to the various valuation factors is a matter for the trial judge to determine. (*Stewart*, 37 Ill. App. 3d at 856; *Independence*, 179 Ill. App. 3d at 916.) We find that the trial court received adequate evidence from the experts in accordance with those factors set forth in *Ahlenius* and *Stewart*, and correctly determined the respective weight to be given to each valuation factor under the circumstances of this case. Thus, we decline to overturn the trial court's decision regarding the valuation of plaintiffs' shares.

With respect to the Bank's argument that the minority and illiquidity discounts were arbitrary and lacked foundation, we find that the trial court acted within its discretion to apply such discounts, even though not required to do so, and that the 10% aggregate for both discounts fell within the range proposed by the Bank's experts and plaintiffs' experts. Although the cases cited by the Bank imposed discounts somewhat higher than the 10% allocated· by the trial court, there is no clear precedent in Illinois requiring such discounts to total more than 10%. Moreover, the trial court was not even required to apply any discounts. Such determinations by the fact finder lie within its discretion and should not be upset if its decision was within the range of evidence and unless such determinations are based upon prejudice, or mistake, neither of which we find to exist here. See *Department of Public Works & Buildings v. Christensen* (1962), 25 Ill. 2d 273, 276.

The Bank's arguments regarding the prejudgment interest rate and the date that interest began to run are equally unsupportable. The trial court appropriately found that the Illinois interest rate statute (Ill. Rev. Stat. 1989, ch. 17, par. 6402) was inapplicable to the instant case, contrary to the Bank's contention. That statute, which applies an interest rate of 5% per year, applies only in five specific situations, none of which exist

in the instant case. Moreover, because section 29 of the Illinois Banking Act does not specify a particular rate for prejudgment interest, it was within the trial court's discretion to apply an interest rate between the 5% urged by the Bank and the 9.69% prime rate urged by plaintiffs. In a case which involved a breach of fiduciary duty, this court applied the prime interest rate in awarding prejudgment interest finding that the statutory rate of 5% was not sufficient to make the party whole. (See *In re Estate of Wernick* (1989), 127 Ill. 2d 61, 89.) In the instant case, the interest rate statute is inapplicable and thus the lower court acted within its discretion in applying a prejudgment interest rate of 7.345%.

Finally, the lower court properly interpreted the plain language of section 29 of the Illinois Banking Act (Ill. Rev. Stat. 1989, ch. 17, par. 336) in ordering prejudgment interest to accrue from the "day prior to the date in which such vote was taken approving such merger," or, in this case, March 12, 1987.

In conclusion, we note that the Bank and its majority shareholders are the moving parties who caused the "merger" and brought themselves within the statute. It was their choice. The minority and dissenting shareholders then exercised their statutory right to have the court decide fair value. Fair value does not necessarily mean that price which the majority shareholders are willing to pay the minority shareholders. That is a matter for the court to determine based on credible expert testimony. We believe that the evidence in this case supports the determination of the trial court.

Thus, we affirm, in whole, the trial court's decision.

*Affirmed.*

JUSTICE BILANDIC took no part in the consideration or decision of this case.